UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| ALBERT JOHNSON, | CIVIL ACTION |
| Plaintiff | |
| VERSUS | NO. 16-16048 |
| CARGILL, INC., ET AL., | SECTION: "E" (5) |
| Defendants | |

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed by Defendant Diamond Star Shipping PTE LTD ("Diamond Star").[1] Plaintiff Albert Johnson opposes the motion.[2] Diamond Star filed a reply.[3] For the reasons that follow, the motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

## FACTUAL BACKGROUND

This is a maritime personal-injury case. Plaintiff Albert Johnson alleges he was injured when he slipped on spilled grain and fell on the deck of the M/V HERCULES OCEAN, a foreign flagged, ocean-going, bulk cargo vessel owned by Diamond Star.[4] It is undisputed that on or about September 24, 2015, the M/V HERCULES OCEAN arrived at the Westwego facility of Cargill, Inc. ("Cargill") and docked there for Cargill to load a cargo of grain into the vessel's holds.[5] The loading commenced on September 25, 2017 and ended on September 27 at 7:10 a.m.[6] It is undisputed that at some point in the morning of September 27, 2017, before Cargill completed the loading at 7:10 a.m., grain

---

[1] R. Doc. 70.
[2] R. Doc. 73; R. Doc. 78 (Plaintiff's Supplemental Opposition).
[3] R. Doc. 81.
[4] R. Doc. 1-3 at 3; R. Doc. 70-2 at 1; R. Doc. 73-2 at 1.
[5] R. Doc. 70-2 at 2; R. Doc. 73-2 at 1.
[6] R. Doc. 70-2 at 2; R. Doc. 73-2 at 1.

1

spilled on the deck of the M/V HERCULES OCEAN because of a "plugging event" that occurred on Cargill's Buhler No. 2 loading device.[7] The parties do not dispute that Cargill subcontracted with Plaintiff's employer, Dockside Linemen, Inc. ("Dockside"), to rake the cargo, once it was in the vessel's holds, to even out the piles of grain.[8] It is undisputed that the Dockside crew boarded the vessel to perform the rake job at 7:30 a.m. on September 27, 2017.[9] The parties do not dispute that the spilled grain was plainly visible on the deck of the vessel on the morning of September 27, 2017.[10] Plaintiff alleges he slipped and fell on the spilled grain, suffering severe and debilitating injuries.[11] Diamond Star moves for summary judgment under Federal Rule of Civil Procedure 56 on the basis that there are no material facts in dispute, it did not breach any legal duty owed to Plaintiff, and it is entitled to judgment as a matter of law.[12]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[13] "An issue is material if its resolution could affect the outcome of the action."[14] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[15] All reasonable inferences are drawn in favor of the non-moving party.[16]

---

[7] R. Doc. 70-2 at 2-3; R. Doc. 73-2 at 2-3.
[8] R. Doc. 70-2 at 1-2; R. Doc. 73-2 at 1-2.
[9] R. Doc. 70-2 at 2; R. Doc. 73-2 at 2.
[10] R. Doc. 70-2 at 3; R. Doc. 73-2 at 3.
[11] R. Doc. 1-3 at 3.
[12] R. Doc. 70.
[13] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[14] *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[15] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[16] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[17]

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." To satisfy Rule 56's burden of production, the moving party must do one of two things: "the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim" or "the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the non-moving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[18]

If the dispositive issue is one on which the non-moving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the non-movant's claim, or (2) affirmatively demonstrating that there is no evidence in the record to establish an essential element of the non-movant's claim.[19] If the movant fails to affirmatively show the absence of evidence in the record, its motion for summary

---

[17] *Hibernia Nat. Bank v. Carner*, 997 F.2d 94, 98 (5th Cir. 1993) (citing *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 147–48 (5th Cir. 1992)).
[18] *Celotex*, 477 U.S. at 322–24.
[19] *Id.* at 331–32 (Brennan, J., dissenting).

3

judgment must be denied.[20] Thus, the non-moving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[21] "[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[22] Rule 56 allows a party to move for summary judgment on all or part of a claim or defense.[23] Partial summary judgment serves the purpose of "rooting out, narrowing, and focusing the issues for trial."[24]

## **LAW AND ANALYSIS**

Plaintiff brings a claim against Diamond Star under the Longshore and Harbor Workers' Compensation Act, which permits a longshoreman to bring an action against a vessel owner when his injury is the result of the negligence of the vessel.[25] For a vessel to be negligent, the vessel must breach a duty it owes to the longshoreman. Generally, "the primary responsibility for the safety of the longshoremen rests upon the stevedore."[26] "Once stevedoring operations have begun, the owner has no duty to supervise or inspect

---

[20] *See id.* at 332.
[21] *Id.* at 332–33. The burden would then shift back to the movant to demonstrate the inadequacy of the evidence relied upon by the non-movant. Once attacked, "the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)." *Id.* at 332–33, 333 n.3.
[22] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[23] FED. R. CIV. P. 56.
[24] *See Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1415 (5th Cir. 1993).
[25] 33 U.S.C. § 905(b).
[26] *Randolph v. Laeisz*, 896 F.2d 964, 970 (5th Cir. 1990).

the work and must only take care to prevent unreasonable hazards."[27] The United States Supreme Court's decision in *Scindia Steam Navigation Co. v. De Los Santos*, outlines the three narrow duties a vessel owner owes to a longshoreman once stevedoring operations commence: (1) the turnover duty; (2) the active control duty; and (3) the duty to intervene.[28]

## I. Turnover Duty

The turnover duty establishes the owner's obligation at the start of the stevedore's activities. The turnover duty requires the owner to exercise "ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety."[29] At the turnover point, the owner also must warn the stevedore of hidden dangers that could not be discovered by the exercise of ordinary care.[30] However, the owner has no obligation to warn the stevedore of dangers "which are either: (1) open and obvious or (2) dangers a reasonably competent stevedore should anticipate encountering."[31]

It is undisputed that the grain on which Plaintiff slipped and fell was spilled on the deck of the M/V HERCULES OCEAN at some point in the morning of September 27, 2015, two days after the M/V HERCULES OCEAN was turned over to Cargill for loading operations.[32] It also is undisputed that the condition at issue, the grain on the deck of the

---

[27] *Landry v. G.C. Constructors*, 514 F. App'x 432, 435 (5th Cir. 2013) (quoting *Levene v. Pintail Enters.*, 943 F.2d 528, 533 (5th Cir.1991)).
[28] *See Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 98-99 (1994); *Scindia Steam Nav. Co. v. De Los Santos*, 451 U.S. 156, 166-79 (1981); *Kirksey v. Tonghai Mar.*, 535 F.3d 388, 391 (5th Cir. 2008).
[29] *Scindia*, 451 U.S. at 167.
[30] *Id.*; *Kirksey*, 535 F.3d at 392; *Levene,* 943 F.2d at 533; *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 535 (5th Cir.1986).
[31] *Kirksey*, 535 F.3d at 392.
[32] R. Doc. 70-2 at 2; R. Doc. 73-2 at 2.

M/V HERCULES OCEAN, was open and obvious.[33] The Court finds there are no material facts in dispute and Diamond Star is entitled to judgment as a matter of law that it did not breach its turnover duty. The motion for summary judgment filed by Diamond Star is granted with respect to this claim.

## II. Active Control Duty

A vessel owner may be liable under *Scindia's* active control duty if it actively involves itself in cargo operations or fails to protect contractors from hazards in areas under the active control of the vessel."[34] To determine whether a vessel owner retains active control, courts in the Fifth Circuit "generally consider 'whether the area in question is within the contractor's work area, whether the work area has been turned over to the contractor, and whether the vessel owner controls the methods and operative details of the stevedore's work.'"[35]

The parties do not dispute that Cargill was the stevedore loading the vessel and the entity giving instructions and directions to the Dockside employees during the rake job on September 27, 2015.[36] No party presents any evidence that Diamond Star controlled the methods and operative details of the stevedore's work. The parties do dispute whether the walkway was within Cargill's work area and whether Diamond Star turned over control of the walkway to Cargill.[37] Cargill employee Damien Robinson testified that Diamond Star's crew is not involved in the loading process at all.[38] Diamond Star presents this testimony as evidence that Cargill had total control of the walkway and the grain

---

[33] R. Doc. 70-2 at 3; R. Doc. 73-2 at 3-4.
[34] *Fontenot v. McCalls Boat Rentals, Inc.*, 227 F. App'x 397, 403 (5th Cir. 2007).
[35] *Hudson v. Schlumberger Tech. Corp.*, 452 F. App'x 528, 535 (5th Cir. 2011) (quoting *Fontenot v. United States*, 89 F.3d 205, 208 (5th Cir. 1996)).
[36] R. Doc. 70-2 at 2; R. Doc. 73-2 at 2.
[37] R. Doc. 70-2 at 2; R. Doc. 73-2 at 1.
[38] R. Doc. 70-7 at 6-7.

spilled there as a result of Cargill's loading operation.[39] Dockside employee Anthony Welch testified that Cargill cautioned the Dockside employees about the grain on the deck in its pre-job safety meeting on September 27, 2015.[40] Diamond star argues this shows the walkway was part of Cargill's work area and was controlled by Cargill.[41] Chief Officer Malais, a Diamond Star employee, testified that he would have the deck watchmen and junior officers perform a roving watch, which included checking the lines, inspecting the gangways, and monitoring the spillage on the deck.[42] Chief Officer Malais testified that the junior officers had the authority to order that the deck be cleaned.[43] Both Plaintiff and Isaac Williams, another Dockside employee, testified that they witnessed crewmembers of the M/V HERCULES OCEAN, owned by Diamond Star, attempting to clean the grain spillage from the deck.[44] Cargill employee Damien Robinson likewise testified that the Diamond Star crew would continuously clean up as the loading job took place[45] and that the walkway was typically swept by a crewmember of the ship.[46] Plaintiff argues this shows that Diamond Star retained some control of the deck and walkway.[47]

The Court finds that material facts are in dispute as to whether Diamond Star maintained active control of the walkway where Plaintiff slipped and fell. While it is undisputed that Cargill was in control of the loading operation, the parties dispute who was responsible for cleaning the walkway and whether Diamond Star maintained active control of the walkway or completely turned the walkway over to Cargill. Because there

---

[39] R. Doc. 70-1 at 12; R. Doc. 80 at 4-6.
[40] R. Doc. 70-5 at 6-7.
[41] R. Doc. 70-1 at 12.
[42] R. Doc. 73-15.
[43] R. Doc. 73-19.
[44] R. Doc. 73-2 at 2 (citing R. Doc. 73-17 at 3; R. Doc. 73-18 at 1).
[45] R. Doc. 70-7 at 21.
[46] R. Doc. 73-20 at 1.
[47] R. Doc. 73 at 4.

are material facts in dispute, Diamond Star is not entitled to judgment as a matter of law that it did not breach the active control duty. The motion for summary judgment filed by Diamond Star is denied as to this claim.

### III. Duty to Intervene

The duty to intervene provides that a vessel owner can be liable if it fails to intervene when (1) it has actual knowledge of an unreasonably dangerous condition that has developed during the course of the stevedoring operations and (2) it knows that the stevedore, in the exercise of obviously improvident judgment, intends to continue working in the face of the danger and cannot be relied upon to protect its workers.[48] A condition is unreasonably dangerous when it is "so hazardous that anyone can tell that its continued use creates an unreasonable risk of harm even when the stevedore's expertise is taken into account."[49] "There is a distinction between knowledge of a condition and knowledge of the dangerousness of that condition."[50] "Knowledge that a condition or even a defect exists, does not imply knowledge that the condition is dangerous."[51] A vessel owner is generally permitted to rely on the stevedore's expert judgment as to the safety of its working conditions[52] and "is entitled to rely on the stevedore's judgment that the condition, though dangerous, was safe enough."[53]

---

[48] *Fontenot*, 227 F. App'x at 402-03; *see also Clay*, 74 F.Supp.2d at 673.
[49] *Randolph v. Laeisz*, 896 F.2d 964, 971 (5th Cir. 1990) (quoting *Greenwood v Societe Francaise De*, 111 F.3d 1239, 1249 (5th Cir. 1997)).
[50] *Id.*
[51] *Casaceli v. Martech Intern. Inc.*, 774 F.2d 1322, 1330 (5th Cir. 1985); *see Fontenot*, 227 F. App'x 397 at *6 (finding no duty to intervene when vessel owner did not know or believe that a trash bag blocking a walkway created an unreasonable risk of harm, regardless of whether vessel owner was aware of the obstruction); *Woods v. Sammisa Co.*, 837 F.2d 842, 853 (5th Cir. 1989) (finding no duty to intervene when vessel owners were aware that a condition existed but were unaware that the condition posed an unreasonable risk of harm); *Pledger v. Phil Guilbreau Offshore, Inc.*, 88 F. App'x 690, 692 (5th Cir. 2004) (finding no duty to intervene when neither stevedore nor shipowner thought the algae on the deck created an unreasonable risk of harm); *see also Futo v. Lykes Bros. Steamship Co.*, 742 F.2d 209 (5th Cir. 1984).
[52] *Id.* (citing *Greenwood*, 111 F.3d at 1249).
[53] *Randolph*, 896 F.2d at 971 (citing *Helaire v. Mobil Oil Co.*, 709 F.2d 1031, 1039 n 12 (5th Cir. 1983); *Scindia*, 451 U.S. at 180).

Diamond Star argues the grain spilled on the deck of the M/V HERCULES OCEAN *was not* an unreasonably dangerous condition and thus it had no duty to intervene because it had no actual knowledge of such a condition.[54] Plaintiff argues the grain spilled in the walkway *was* an unreasonably dangerous condition, triggering Diamond Star's duty to intervene.[55] It is undisputed that no other workers slipped or fell because of the grain on the deck of the M/V HERCULES OCEAN.[56] It is also undisputed that no one from Cargill or Dockside spoke with any crewmember of the M/V HERCULES OCEAN about cleaning up the grain spilled on the deck.[57] Cargill employee Damien Robinson[58] and Dockside employees Anthony Welch,[59] Isaac Williams,[60] Kevin Cole,[61] and Victor Dorsey[62] testified that grain spillage was common and to be expected in this kind of loading operation.[63] Chief Officer Malais testified that the spillage on the deck of the M/V HERCULES OCEAN was a normal amount of spillage.[64] Damien Robinson testified that he did not consider the spillage on the deck of the M/V HERCULES OCEAN excessive.[65] Isaac Williams testified that on previous occasions, he witnessed similar amounts of grain spilled on the decks of other ships.[66] Plaintiff testified that on the morning of his accident, he was not concerned about walking through the pile of grain and was not concerned about slipping.[67] Diamond Star argues this shows that the grain on the deck of the M/V

---

[54] R. Doc. 70-1; R. Doc. 81.
[55] R. Doc. 73.
[56] R. Doc. 70-2 at 3; R. Doc. 73-2 at 3.
[57] R. Doc. 70-2 at 4; R. Doc. 73-2 at 3.
[58] R. Doc. 70-7 at 3-4.
[59] R. Doc. 70-5 at 10-12.
[60] R. Doc. 70-6 at 12-13.
[61] R. Doc. 70-8 at 7.
[62] R. Doc. 70-9 at 2-3.
[63] R. Doc. 70-1 at 15.
[64] R. Doc. 70-13 at 2.
[65] R. Doc. 81-1 at 2-3.
[66] R. Doc. 70-5 at 23-24.
[67] R. Doc. 73-30 at 1-2.

HERCULES OCEAN was not an unreasonably dangerous condition, and thus it had no actual knowledge of such a condition.[68] Plaintiff argues Diamond Star had actual knowledge of an unreasonably dangerous condition because it was responsible for cleaning the deck and maintaining the walkway[69] and because Dockside employee Anthony Welch testified that although grain spillage was common, the amount of spillage in the walkway where Plaintiff fell would not be found elsewhere.[70]

Based on the undisputed facts, the Court finds as a matter of law that the spillage did not create an unreasonably dangerous condition. The grain spilled on the deck of the M/V HERCULES OCEAN was not "so hazardous that anyone [could] tell that its continued use create[d] an unreasonable risk of harm."[71] Rather, multiple witnesses testified that this type of grain spillage was common.[72] Plaintiff himself testified that on the morning of his accident, he was not concerned about slipping or walking through the pile of grain.[73] Regardless of whether Diamond Star was aware of the grain spilled on the deck and walkway, "[k]nowledge that a condition or even a defect exists, does not imply knowledge that the condition is dangerous."[74]

Because an unreasonably dangerous condition did not exist, Diamond Star could not have actual knowledge of an unreasonably dangerous condition, and it had no duty to intervene. Diamond Star is entitled to judgment as a matter of law that it did not breach the duty to intervene. The motion for summary judgment filed by Diamond Star is granted as to this claim.

---

[68] R. Doc. 70-1; R. Doc. 81.
[69] R. Doc. 73 at 4-8.
[70] R. Doc. 73-10 at 2 ("It don't be like that everywhere.").
[71] *Id.* (quoting *Greenwood*, 111 F.3d at 1249).
[72] R. Doc. 70-5 at 10-12; R. Doc. 70-6 at 12-13; R. Doc. 70-7 at 3-4; R. Doc. 70-8 at 7; R. Doc. 70-9 at 2-3.
[73] R. Doc. 73-30 at 1-2.
[74] *Casaceli*, 774 F.2d at 1330; *see also Futo*, 742 F.2d 209.

## **CONCLUSION**

For the foregoing reasons, **IT IS ORDERED** that the motion for summary judgment filed by Diamond Star Shipping, PTE LTD[75], is **GRANTED IN PART.** Defendant is entitled to judgment as a matter of law that it did not breach the turnover duty or the duty to intervene.

**IT IS FURTHER ORDERED** that the motion for summary judgment filed by Diamond Star Shipping, PTE LTD[76], is **DENIED** as to the claim of breach of the active control duty.

**New Orleans, Louisiana, this 1st day of November, 2018.**

*[signature: Susie Morgan]*

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[75] R. Doc. 70.
[76] R. Doc. 70.