UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| ALBERT JOHNSON, Plaintiff | CIVIL ACTION |
|---|---|
| VERSUS | NO. 16-16048 |
| CARGILL, INC., ET AL., Defendants | SECTION: "E" (5) |

## ORDER AND REASONS

Before the Court is a Motion for Reconsideration filed by Defendant Diamond Star Shipping PTE LTD ("Diamond Star").[1] The motion is opposed.[2] For the reasons that follow, the Motion for Reconsideration is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

On November 1, 2018, the Court granted in part and denied in part Diamond Star's Motion for Summary Judgment.[3] The Court found the following: (1) Diamond Star did not breach the turnover duty because there was no grain spilled on the deck when the vessel was turned over;[4] (2) a disputed issue of material fact with respect to who controlled the walkway precluded summary judgment on whether Diamond Star breached the active control duty;[5] and (3) Diamond Star did not breach the duty to intervene because there was no unreasonably dangerous condition.[6]

Diamond Star asks the Court to reconsider its ruling with respect to the active

---

[1] R. Doc. 85.
[2] R. Doc. 88.
[3] R. Doc. 84 (Order and Reasons); R. Doc. 70 (Motion for Summary Judgment).
[4] R. Doc. 84 at 5-6.
[5] *Id.* at 6-7.
[6] *Id.* at 10-11.

1

control duty, given the Court's ruling with respect to the duty to intervene.[7] The Court found, "as a matter of law[,] that the spillage [of grain on the deck of the M/V HERCULES OCEAN] did not create an unreasonably dangerous condition" and, as a result, that Diamond Star did not have a duty to intervene.[8] Diamond Star argues that, because there was no unreasonably dangerous condition, it did not breach the active control duty, even if the walkway remained under its active control.[9]

## **LEGAL STANDARD**

A motion for reconsideration of an interlocutory order is governed by Federal Rule of Civil Procedure 54(b).[10] Under Rule 54(b), the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.[11] A motion for reconsideration, however, "is 'not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of [the order].'"[12] "The Court is mindful that '[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly.'"[13] "When there exists no independent reason for reconsideration other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and should not be granted."[14]

---

[7] R. Doc. 85-1 at
[8] R. Doc. 84 at 10.
[9] R. Doc. 85.
[10] FED. R. CIV. P. 54(b) (providing an order that adjudicated fewer than all the claims among the parties "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"); s*ee Cabral v. Brennan*, 853 F.3d 763, 766 (5th Cir. 2017) (Finding "the court should have analyzed the motion for reconsideration [of a denial of summary judgment] under Rule 54(b) instead of Rule 59(e), which applies to final judgments" but also finding such error harmless).
[11] *Cabral*, 853 F.3d at 766 n. 3.
[12] *Lacoste v. Pilgrim Int'l*, 2009 WL 1565940, at *8 (E.D. La. June 3, 2009) (Vance, J.) (quoting *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004)).
[13] *Castrillo v. Am. Home Mortg. Servicing, Inc.*, 2010 WL 1424398, at *4 (E.D. La. Apr. 5, 2010) (alteration in original) (quoting *Templet,* 367 F.3d at 479).
[14] *Lightfoot v. Hartford Fire Ins. Co.*, No. 07-4833, 2012 WL 711842, at *3 (E.D. La. Mar. 5, 2012) (Brown, J.).

The district court's discretion in granting a motion for reconsideration is broad,[15] but courts typically analyzes these motions under the standard governing Rule 59(e) motions to alter or amend a final judgment.[16] In deciding motions to reconsider under the Rule 59(e) standards, the courts in this district have considered the following factors:

(1) whether the movant demonstrates the motion is necessary to correct manifest errors of law or fact upon which the judgment is based;

(2) whether the movant presents new evidence;

(3) whether the motion is necessary in order to prevent manifest injustice; and

(4) whether the motion is justified by an intervening change in the controlling law.[17]

The Court finds reconsideration is warranted in this case. Because Diamond Star's argument with respect to its active control duty is premised on the Court's ruling with respect to Diamond Star's duty to intervene, the Court will reconsider its ruling on both duties.

## **LAW AND ANALYSIS**

Section 905(b) of the Longshore and Harbor Workers Compensation Act provides the exclusive remedy for a longshoreman who is injured by the negligence of a vessel.[18] In *Scindia Steam Navigation Co. v. De Los Santos*, the Supreme Court outlined three *narrow* duties a vessel owner owes to a longshoreman once stevedoring operations

---

[15] *See Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1414–15 (5th Cir.1993).
[16] *See, e.g., United States v. Bollinger Shipyards, Inc.*, 2013 WL 3984058, at *4 (E.D. La. 2013) (Vance, C.J.); *Rosemond v. AIG Ins.*, 2009 WL 1211020, at *2 (E.D. La. May 4, 2009) (Barbier, J.); *Letap Hospitality, L.L.C. v. Days Inn Worldwide, Inc.*, 2008 WL 2959649, at *2 (E.D. La. July 30, 2008) (Berrigan, J.).
[17] *Castrillo*, 2010 WL 1424398, at *4. The Court notes that the time limits of Rule 59 do not apply in this matter because the order appealed is interlocutory. Rules 59 and 60 set forth deadlines for seeking reconsideration of final judgments. *See Carter v. Farmers Rice Milling Co., Inc.*, 33 F. App'x 704 (5th Cir. 2002); *Lightfoot*, 2012 WL 711842, at *2.
[18] 33 U.S.C. § 905(b).

commence: (1) the turnover duty; (2) the active control duty; and (3) the duty to intervene.[19] The turnover duty requires the owner to have the ship and its equipment in suitable condition at the turnover point and to warn the stevedore of hidden dangers.[20] The active control duty requires the shipowner to protect longshoremen from hazards in areas under the active control of the vessel.[21] The duty to intervene requires the vessel owner to intervene when it has actual knowledge of an unreasonably dangerous condition *and* knows that the stevedore, in the exercise of obviously improvident judgment, intends to continue working in the face of the danger and cannot be relied upon to protect its workers.[22] The Fifth Circuit requires "something more," beyond mere shipowner knowledge of a dangerous condition to trigger the duty to intervene.[23] To trigger the duty to intervene, a condition must be "*so* hazardous that *anyone* can tell that its continued use creates an unreasonable risk of harm."[24]

## I. Duty to Intervene

The Court finds reconsideration is warranted to correct an error of law or fact in its Order on Diamond Star's Motion for Summary Judgment with respect to Diamond Star's duty to intervene.[25] In analyzing whether Diamond Star breached its duty to intervene, the Court found that Diamond Star had no knowledge of an unreasonably dangerous condition because one did not exist. The Court concluded "as a matter of law[,] that the spillage [of grain on the deck of the M/V HERCULES OCEAN] did not create an

---

[19] *Scindia Steam Nav. Co. v. De Los Santos*, 451 U.S. 156, 166-79 (1981); s*ee also Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 98-99 (1994); *Kirksey v. Tonghai Mar.*, 535 F.3d 388, 391 (5th Cir. 2008).
[20] *Scindia*, 451 U.S. at 167.
[21] *Fontenot v. McCalls Boat Rentals, Inc.*, 227 F. App'x 397, 403 (5th Cir. 2007).
[22] *Id.* at 402-03; *see also Clay v. Daiichi Shipping*, 74 F. Supp. 2d 665, 673 (E. D. La. 1999).
[23] *Fontenot*, 227 F. App'x at 404; *Greenwood v. Societe Francaise De*, 111 F.3d 1239, 1249 (5th Cir. 1997).
[24] *Fontenot*, 227 F. App'x at 405 (quoting *Greenwood*, 111 F.3d at 1248) (emphasis added).
[25] R. Doc. 84.

4

unreasonably dangerous condition" and, as a result, that Diamond Star did not have a duty to intervene.[26]

Upon reconsideration, the Court concludes there is a disputed issue of material fact with respect to whether the amount of grain spilled on the deck of the M/V HERCULES OCEAN created an unreasonably dangerous condition. The parties dispute whether the amount of grain spilled on the deck was common, normal, and expected.[27] Cargill employee Damien Robinson[28] and Dockside employees Anthony Welch,[29] Isaac Williams,[30] Kevin Cole,[31] and Victor Dorsey[32] testified that grain spillage was common and to be expected in this kind of loading operation.[33] Chief Officer Malais testified that the spillage on the deck of the M/V HERCULES OCEAN was a normal amount of spillage.[34] Damien Robinson testified that he did not consider the spillage on the deck of the M/V HERCULES OCEAN excessive.[35] Isaac Williams testified that on previous occasions, he witnessed similar amounts of grain spilled on the decks of other ships.[36] Plaintiff testified that on the morning of his accident, he was not concerned about walking through the pile of grain and was not concerned about slipping.[37] On the other hand, Dockside employee Anthony Welch testified that although grain spillage was common, the amount of spillage in the walkway where Plaintiff fell would not be found elsewhere.[38]

---

[26] R. Doc. 84 at 10.
[27] R. Doc. 70-2 at 3; R. Doc. 73-2 at 2-3.
[28] R. Doc. 70-7 at 3-4.
[29] R. Doc. 70-5 at 10-12.
[30] R. Doc. 70-6 at 12-13.
[31] R. Doc. 70-8 at 7.
[32] R. Doc. 70-9 at 2-3.
[33] R. Doc. 70-1 at 15.
[34] R. Doc. 70-13 at 2.
[35] R. Doc. 81-1 at 2-3.
[36] R. Doc. 70-5 at 23-24.
[37] R. Doc. 73-30 at 1-2.
[38] R. Doc. 73-10 at 2 ("It don't be like that everywhere.").

This disputed issue of fact is not material to a determination of whether Diamond Star breached the duty to intervene because, given the conflicting testimony, the condition was not "*so* hazardous that *anyone* can tell that its continued use creates an unreasonable risk of harm."[39] Even if the grain created an unreasonably dangerous condition, and even if Diamond Star had knowledge of the grain spilled on the deck, "something more" is required to trigger the duty to intervene.[40] This is so because the shipowner defers to the qualification of the stevedore in the selection and use of equipment and relies on the competency of the stevedore; thus, it might well be reasonable for the owner to rely on the stevedore's judgment that a condition, though dangerous, was safe enough.[41] Diamond Star remains entitled to judgment as a matter of law that it did not breach the duty to intervene.

## II.  Active Control Duty

Because the Court revised the basis of its ruling with respect to the duty to intervene, and because Diamond Star bases its request for reconsideration of its active control duty on the Court's original ruling, reconsideration of Diamond Star's active control duty is not warranted. There remain disputed issues of material fact with respect to who controlled the walkway where the grain spilled and the amount of the spillage. As a result, Diamond Star is not entitled to judgment as a matter of law that it did not breach the active control duty.

Accordingly, Defendant Diamond Star's motion for reconsideration is **GRANTED IN PART AND DENIED IN PART**.

Diamond Star is entitled to judgment as a matter of law that it did not breach the

---

[39] *Fontenot*, 227 F. App'x at 405 (quoting *Greenwood*, 111 F.3d at 1248) (emphasis added).
[40] *Id.* at 404.
[41] *Greenwood*, 111 F.3d at 1249 (citing *Scindia*, 451 U.S. at 12; *Helaire*, 709 F.2d at 1039 n. 12).

turnover duty or the duty to intervene.

**New Orleans, Louisiana, this 9th day of January, 2019.**

_____
**SUSIE MORGAN
UNITED STATES DISTRICT JUDGE**